Matter of Biggs v Eden Renewables LLC (2020 NY Slip Op 07011)





Matter of Biggs v Eden Renewables LLC


2020 NY Slip Op 07011


Decided on November 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 25, 2020

531440

[*1]In the Matter of Susan L. Biggs et al., Petitioners,
v
Eden Renewables LLC et al., Respondents.

Calendar Date: October 20, 2020

Before: Garry, P.J., Lynch, Clark, Devine and Reynolds Fitzgerald, JJ.


Douglas H. Zamelis, Cooperstown, for petitioners.
Hodgson Russ LLP, Albany (Daniel A. Spitzer of counsel), for Eden Renewables LLC and another, respondents.
Whiteman Osterman & Hanna LLP, Albany (John J. Henry of counsel), for Town of Duanesburg Planning Board, respondent.



Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Schenectady County) to review a determination of respondent Town of Duanesburg Planning Board granting a request by respondent Eden Renewables LLC for a special use permit.
In May 2018, respondent Eden Renewables LLC applied to respondent Town of Duanesburg Planning Board (hereinafter the Planning Board) for a special use permit and site plan approval to construct a major solar energy system [FN1] consisting of two five-megawatt solar panel arrays on property owned by respondent Richard B. Murray. In July 2018, pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), the Planning Board classified the project as a type I action and declared itself the lead agency. Throughout the following year, the Planning Board continued to review the plans, hired an engineer to consult in making its decisions and requested additional information from Eden. Eden complied with the Planning Board's requests for additional information. On July 18, 2019 and August 15, 2019, the Planning Board held public hearings to solicit public comments. Petitioners, who both reside adjacent to the property housing the proposed solar panel arrays, submitted their concerns at these meetings and at other times. The Planning Board requested that Eden respond to the public comments and questions, which it did. In September 2019, the Planning Board issued a negative declaration under SEQRA, unanimously voted to approve Eden's application for a site plan, and issued a special use permit, subject to certain conditions. Petitioners commenced this CPLR article 78 proceeding seeking to annul the Planning Board's determination. After respondents answered, seeking dismissal of the petition, Supreme Court transferred the proceeding to this Court, finding that petitioners raised the issue of substantial evidence.[FN2]
Petitioners initially contend that the Planning Board did not make findings as required by the special use permit and site plan standards set forth in the Town's zoning ordinance and Local Law No. 1 (2016) of the Town of Duanesburg, entitled the Solar Energy Facilities Law (hereinafter Local Law No. 1). A special use permit "'is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood'" (Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d 190, 195 [2002], quoting Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston, 30 NY2d 238, 243 [1972]; accord Matter of Troy Sand & Gravel Co., Inc. v Fleming, 156 AD3d 1295, 1299 [2017], lv denied 31 NY3d 913 [2018]; Matter of Frigault v Town of Richfield Planning Bd., 128 AD3d 1232, 1233-1234 [2015], lv denied 26 NY3d 911 [*2][2015]). That said, the applicant still must show compliance with any legislatively imposed conditions upon the permitted use (see Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d at 195). A municipality "retains some discretion to evaluate each application for a special use permit, to determine whether applicable criteria have been met and to make commonsense judgments in deciding whether a particular application should be granted" (Matter of Twin County Recycling Corp. v Yevoli, 90 NY2d 1000, 1002 [1997]).
Pursuant to Local Law No. 1, an applicant seeking to install a major solar energy system must obtain site plan approval and a special use permit from the Planning Board (see Local Law No. 1 [2016] of Town of Duanesburg § 4 [4] [b]). The Town's zoning ordinance requires the Planning Board, in reviewing all proposed site plans, to make in depth and detailed determinations with respect to, among other things, SEQRA, traffic control, lighting, adequacy of visual and/or noise buffers between the applicant's and adjoining lands, the imposition of performance standards to make sure that adjacent or neighboring properties are protected against noise, glare or unsightliness, and the compatibility of the proposed use with existing neighboring structures (see Town of Duanesburg, N.Y. Zoning Ordinance § 14.6.2.4 [c] [1]-[11]). With respect to a major solar energy system specifically, Local Law No. 1 also contains compliance requirements with respect to, among other things, signage, buffer and screening, glare, site disturbance, noise and setbacks (see Local Law No. 1 of Town of Duanesburg § 4 [3]). Before issuing a special use permit, but after there has been notice and public hearings, "the Planning Board shall find and determine that: (a) [s]uch use is reasonably necessary or convenient to the public health, welfare or the economic or social benefit of the community; (b) [s]uch use is suitably located in relation to transportation, water and sewerage requirements of [the Town's zoning o]rdinance or, where not specifically required, that such facilities are otherwise adequate to accommodate anticipated use; [and] (c) [t]he character of the neighborhood and values of surrounding property is reasonably safeguarded (Town of Duanesburg, N.Y. Zoning Ordinance § 14.6.2). Finally, a major solar energy system must comply with all the substantive and procedural requirements of a special use permit review set forth in section 14.6 of the Town's zoning ordinance (see Local Law No. 1 of Town of Duanesburg § 4 [4] [b]).
The Planning Board's resolution contained findings that specifically addressed elements of the Town's zoning ordinance and the requirements of Local Law No. 1. Specifically, in reviewing the site plan proposal and issuing the special use permit, the Planning Board found that the project will have positive economic benefits to the Town by way of a payment in lieu of taxes agreement, will add jobs from construction and maintenance, will provide renewable energy in the production of electricity and will contribute to the state's goal of replacing fossil fuel generated electricity. The Planning Board also found that the project will not have any permanent impact on traffic, the groundwater or surface water, except for insignificant and temporary impacts during construction, it will not significantly impact federal wetlands or water bodies, and it will have minimal impact on plants, animals, vegetation and neighboring properties. In addition, the character of the community will not change, because the project will not be visible to surrounding homes and roadways, agricultural uses will continue, thus making it consistent with the community, and there would be no impact on any historic resources. The Planning Board also noted that the project is not permanent and is subject to a decommissioning plan.
These findings were made after holding two public hearings and after reviewing, among other things, a full environmental assessment form, a letter from the New York State Parks, Recreation and Historic Preservation declaring that no historic properties — including archaeological and/or historic resources — would be affected, a planning and zoning coordination referral from the County's Commissioner of Economic Development and Planning approving the project, a copy of the decommissioning plan, a copy of the visual impact assessment, a storm water pollution prevention plan, a permit from the Department of Environmental Conservation and communications with a local fire chief. Contrary to petitioners' contention, the Planning Board did not inordinately rely on its negative declaration under SEQRA in rendering its findings. In any event, even though the Planning Board may have relied on the negative declaration in areas where it overlapped with Local Law No. 1, said reliance is appropriate (see Matter of Frigault v Town of Richfield Planning Bd., 107 AD3d 1347, 1352 [2013]). In these circumstances, we find that there was conformance with the standards imposed by Local Law No. 1 and the Town's zoning ordinance.
We also find that the Planning Board's determination had a rational basis and was not arbitrary or capricious. In reviewing an administrative determination such as this, the issue before us is "whether the determination was affected by an error of law, was arbitrary or capricious or lacked a rational basis. An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts. Furthermore, even if a different result would not have been unreasonable, an agency determination will be sustained if it has a rational basis" (Matter of 2-4 Kieffer Lane LLC v County of Ulster, 172 AD3d 1597, 1599-1600 [2019] [internal quotation marks and citations omitted]; see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; Matter of TAC Peek Equities, Ltd. v Town of Putnam Val. Zoning Bd. of Appeals, 127 AD3d 1216, 1217 [2015]). Having considered the record, we are of the view that the Planning Board's determination should be confirmed.
A Planning Board may not deny a special use permit based "solely on community objection" (Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d at 196). Petitioners and the community objected to the project due to potential concerns of negative visual impact and negative impact upon adjoining property values. The Planning Board had ample evidence to support its determination that these impacts would be minimal. The visual assessment survey determined that, between the existing vegetation and the topography, the completed project would not be readily visible to the surrounding area. The Planning Board further found that the property owner's concern about potential reflected glare from the solar panels was adequately addressed through Eden's use of anti-glare coating. To further shield the community's view of the project and to allow adjoining property owners to cut down their own trees if they so choose, the Planning Board required a 1,600-foot evergreen barrier. This evergreen screen, the property's continued use of the land for beekeeping and sheep grazing and the determination that the project will not affect any historic resources all provide a rational basis for the Planning Board's determination that the character of the neighborhood and property values would be reasonably safeguarded. Accordingly, we find that the Planning Board's determination granting Eden's request for a special use permit is supported by a rational basis and must be confirmed (see Matter of Peckham v Calogero, 12 NY3d at 431).
Garry, P.J., Lynch, Clark and Devine, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: A major solar energy system is defined in the Town's Solar Energy Facilities Law as "a ground or roof mounted solar system that produces power to off-site customers" (Local Law No. 1 [2016] of the Town of Duanesburg § 4 [1] [c]).

Footnote 2: As this matter is "not being premised upon evidence received in the context of a true adjudicatory hearing, as contemplated by CPLR 7803 (4), the transfer was inappropriate" (Matter of Wal-Mart Stores v Planning Bd. of Town of N. Elba, 238 AD2d 93, 96 [1998]). Nevertheless, we retain jurisdiction and address petitioners' claims in the interest of judicial economy.